UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEREMY HUGHES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-00905 |
| | § | |
| BELLE STATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Jeremy Hughes brought this suit against several Defendants, including Belle Station, David Buehring, Scott Cogburn and Eleazar Agrait. Hughes's Complaint alleges tort and constitutional claims arising out of a January 14, 2018, incident that resulted in Hughes's arrest. Four other Defendants—Kyle McLaughlin, Harris County, the City of Houston, and the Houston Police Department—have been dismissed from the case. *See* ECF No. 106.

Now, the remaining Defendants move for summary judgment. ECF Nos. 135, 137, 145. For the reasons that follow, the Motions for Summary Judgment are **GRANTED**.

### I. BACKGROUND

#### A. Allegations in Hughes's Complaint

The relevant allegations are discussed in the Court's prior Order, ECF No. 106, but are summarized briefly here. On January 14, 2018, Hughes, who is Black, went to Belle Station, a bar. At some point, David Buehring, Belle Station's head of security, asked Hughes to leave.

After leaving, Hughes realized that he had left his debit card at the bar. He went to the front door, where he met Buehring, along with Eleazar Agrait and Scott Cogburn, two Harris County Sheriff deputies. They did not find Hughes's card and told him to leave. Hughes called 9-1-1.

Hughes alleges that Buehring and the deputies approached his car, Buehring kicked the car, and Hughes backed up his car and drove "to a safe location a few blocks away from Belle Station" to wait for the police to arrive. Houston Police Officer Kyle McLaughlin responded to the scene. Buehring told McLaughlin that Hughes had hit Buehring with his car.

Hughes called 9-1-1 again. The dispatcher told him to wait outside the bar, so he returned to wait outside Belle Station. Buehring and the deputies approached him and placed him in handcuffs. Hughes alleges that they did not let him use the restroom despite his requests, and he was forced to urinate on himself.

McLaughlin returned. He covered his body camera for around 13 seconds while he talked with Cogburn, blocking video and audio recording. McLaughlin then looked for damage on the vehicle from the alleged assault, and Hughes alleges that McLaughlin found no such damage.

Hughes was subsequently arrested and charged with Aggravated Assault with a Deadly Weapon in Harris County District Court. Allegedly, Buehring told prosecutors that Hughes had hit him with such force that Buehring lacerated his kidney and herniated a disc in his spine. Hughes alleges that this is false because Buehring continued to work, worked a shift the next day, checked in on Facebook at a gym three days later, and failed to provide any medical records to document his injuries. Hughes was incarcerated for seven days before the charges were ultimately dismissed.

### B. Video Recordings

Two videos document portions of the incident. The first, ECF No. 135-5 is video from McLaughlin's body-worn camera from the first time he responded to the scene. It shows the following interactions:

- When McLaughlin arrives at the scene, Buehring, Cogburn and Agrait approach him.

- Buehring tells McLaughlin that Hughes (1) said that he was going to come back and shoot the place up and (2) struck Buehring with his car.

- The officers further state that Hughes wanted his debit card back, but they couldn't find it, and Hughes subsequently drove up and refused to move his car.

- Buehring then tells McLaughlin that he told Hughes to move his car, Hughes cursed at him, another manager came out, Hughes continued to curse and said he was going to come back and shoot the place up. Buehring says that he responded that he was going to get "[his] cops" because it was a "terroristic threat." Then Hughes got in the car, backed up, and hit Buehring.

- After further discussion, McLaughlin, Buehring, Cogburn, and Agrait walk down the street to look for Hughes. They do not find him, so they return to outside of Belle Station.

- The bartender comes out and gives Hughes's card and license plate number to McLaughlin. The bartender recounts her interaction with Hughes.

- McLaughlin gets more information, fills out paperwork, and gives Buehring a case number.

- At the end of the video, McLaughlin again recounts his version of events, including that at one point he went to get "another manager," that Hughes was cursing at him, and that Hughes hit him with his car when he backed up.

The second video, ECF No. 135-8, is footage from McLaughlin's body-worn camera from the second time that he responded to the scene that evening. The first portion of the video depicts the following interactions[1]:

- McLaughlin returns to outside of Belle Station. Hughes is standing by a car in handcuffs with the officers next to him.

- Hughes asks to go to the restroom. McLaughlin says no, and Hughes says he really needs to go to the restroom or he will have to urinate on himself.

- Cogburn comes over to McLaughlin to talk. McLaughlin's hand covers the camera for about 13 seconds, preventing audio and video from being captured.

- McLaughlin walks around the car with his flashlight, looking for damage.

- McLaughlin asks Hughes what happened. Hughes responds: "I owe both of these gentlemen an apology." McLaughlin asks Hughes what happened, and Hughes explains that Buehring kicked and damaged his vehicle. Hughes says he did not threaten anybody, he works for the United States Congress, and he "did step out of line one second." He repeatedly denies threatening to shoot the place, but tells McLaughlin that he did say that he "was gonna come back with the hood." Hughes says that Buehring threatened to kill

---

[1] The video continues for some time, but this summary discusses only the first portion of the video, which includes all of the background that is relevant to the instant dispute.

3

      Hughes if he crossed the line, so Hughes backed up his car. He explains he returned only because the police told him to wait for them outside Belle Station. Hughes repeats that he didn't make any threats.

- McLaughlin put Hughes in the back of the police car.

### C. Procedural History

This case has been pending for more than three years and has gone through six amended complaints. All Defendants except for Buehring, Cogburn, Agrait, and Belle Station have been dismissed. The Court's most recent Memorandum & Order, ECF No. 135, (1) dismissed all claims against Harris County; (2) dismissed state-law tort claims against Agrait and Cogburn; (3) dismissed the § 1983 unreasonable-search and due-process claims against Agrait and Cogburn; and (4) allowed the § 1983 unreasonable-seizure claim against Agrait and Cogburn to proceed. This is the first round of briefing for which Hughes is proceeding pro se.

Belle Station moved for summary judgment. ECF No. 137. Hughes responded, ECF No. 146, Belle Station replied, ECF No. 147, and Hughes filed a Surreply, ECF No. 149.

Additionally, Cogburn and Agrait moved for summary judgment, ECF No. 135, as did Buehring, ECF No. 145. Hughes did not file a Response to either Motion.

Separately, David Buehring filed a civil case in state court against Hughes alleging that Hughes hit him with his car, causing injuries. ECF Nos. 135-14, 135-15. The state court granted a default judgment against Hughes in the state court case. ECF No. 135-16.

## II.    BELLE STATION'S MOTION FOR SUMARY JUDGMENT (ECF No. 137)

Against Belle Station, Hughes brought claims of negligence, gross negligence, and vicarious liability for Buehring's tortious conduct. Belle Station moved for summary judgment. The Court **GRANTS** Belle Station's Motion.

Hughes fails to to show a genuine issue of fact. It is possible that Belle Station wronged Hughes. But Hughes has not presented sufficient evidence to survive summary judgment.

4

### A. Negligence

First, Hughes argues that Belle Station (1) negligently hired Buehring by failing to perform a background check; (2) negligently supervised Buehring; (3) failed to train Buehring; and (4) negligently retained Buehring while failing to discipline him or investigate his conduct.

To show negligence, the Hughes "must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). When analyzing whether a duty exists, the Court must "balance[e] . . . a variety of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant." *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 425 (Tex. 2011).

#### 1. Negligent Hiring

Hughes argues that Belle Station negligently hired Buehring. "[W]hen an employer hires an employee, the employer must exercise reasonable care to see that the employee is competent and fit for the job." *Doe v. YUM! Brands, Inc*., 639 S.W.3d 214, 226 (Tex. App. 2021). "Negligence in hiring requires that the employer's failure to investigate, screen, or supervise its hired employee be a proximate cause of the plaintiff's alleged injuries." *Id.*

Hughes argues that (1) Belle Station should have performed a background check on Buehring; (2) it failed to do so; and (3) if it had done so, it would have found that Buehring had an "extensive and felonious history including theft and aggravated assault." ECF No. 146 at 8-9. But he offers only assertions. He puts forward no evidence of (1) Belle Station's hiring policies, (2) whether it performed a background check on Buehring, or (3) Buehring's criminal history. He points to testimony from Agrait stating that Agrait was hired in part due to word of mouth, but this testimony does not indicate whether Belle Station did a background check when they hired

5

Buehring or that a background check would have put Belle Station on notice that hiring Buehring created an unreasonable risk of harm.

### 2. Negligent Supervision

Hughes next contends that Belle Station negligently supervised Buehring because (1) Belle Station should have had multiple people working the door; and (2) a representative from ownership must be on-site while the business operates. But neither argument succeeds because Hughes fails to present evidence to support either claim.

### 3. Failure to Train

Hughes also argues that Belle Station failed to train Buehring. But he offered no evidence of what training Buehring did or did not receive. Likewise, he offers no evidence about the standard of training that someone in Buehring's position should have received.

### 4. Negligent Retention

Hughes's negligent retention argument again raises issues related to Buehring's background check. For the reasons discussed above, this claim does not succeed.

## B. Gross Negligence

Hughes also brings a gross negligence claim. "[A] finding of gross negligence [i]s conditional upon a finding of ordinary negligence." *Shell Oil Co. v. Humphrey,* 880 S.W.2d 170, 174 (Tex. App. 1994), *writ denied* (Nov. 3, 1994). Hughes's ordinary negligence claims do not succeed. Thus, he cannot bring a viable claim of gross negligence.

## C. Respondeat Superior

Finally, Hughes contends that Belle Station was vicariously liable for Buehring's misconduct based on a theory of respondeat superior. "[T]o prove an employer's vicarious liability for a worker's negligence, the plaintiff must show that, at the time of the negligent conduct, the

worker (1) was an employee and (2) was acting in the course and scope of his employment." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). An employee acts within the scope of his employment if (1) "the tortious act falls within the scope of the employee's general authority"; (2) the act was "in furtherance of the employer's business"; and (3) "the act was "for the accomplishment of the object for which the employee was hired." *Id.* (cleaned up).

Even if an employee starts out within the scope of their duties, respondeat superior liability detaches if they shift to acting outside the scope of their duties. *See National Life & Accuity Ins. Co v. Ringo*, 137 S.W.2d 828, 831-32 (Tex. App. 1940). Even if, as Hughes alleges, Buehring lied by saying that (1) Hughes hit him with his car and (2) Hughes threatened to shoot up Belle Station, any such lies are not for the benefit of the employer.

### III. COGBURN AND AGRAIT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 135)

Cogburn and Agrait moved for summary judgment. ECF No. 135. The only remaining claim against them is the unlawful seizure claim. Hughes did not respond. Accordingly, the Court **GRANTS** the Motion for Summary Judgment.

### IV. BUEHRING'S MOTION FOR SUMMARY JUDGMENT (ECF No. 145)

Buehring moved for summary judgment on the grounds that Hughes failed to diligently effectuate service. ECF No. 145. Again, Hughes did not respond.

"To 'bring suit' within the two-year limitations period prescribed by section 16.003, a plaintiff must not only file suit within the applicable limitations period, but must also use diligence to have the defendant served with process." *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). "When a plaintiff files a petition within the limitations period, but does not serve the defendant until after the statutory period has expired, the date of service relates back to the date of filing if the plaintiff exercised diligence in effecting service." *Id.*

7

The events in this lawsuit happened on January 14, 2018. Hughes filed this case on January 14, 2020, the day before the statute of limitations ran.

Hughes did not attempt to serve Buehring between until March. Between March and May 2020, Hughes's process server unsuccessfully attempted to serve Buehring ten times. ECF No. 25-1. On June 19, 2020, Hughes filed a Motion for Substitute Service, which the Court granted on the same day. ECF Nos. 25, 28. There was a 126-day delay between when the Court granted Hughes's Motion for Substituted Service and October 23, 2020, when Buehring was actually served.[2] Hughes has offered no explanation for this delay.

Hughes has therefore failed to diligently effectuate service. As a result, the statute of limitations has run. Buehring's Motion for Summary Judgment is **GRANTED.**

V.   CONCLUSION

Belle Station's Motion for Summary Judgment (ECF No. 137) is **GRANTED**. Cogburn and Agrait's Motion for Summary Judgment (ECF No. 135) is **GRANTED**. Buehring's Motion for Summary Judgment (ECF No. 145) is **GRANTED**.

All pending deadlines are terminated. If he chooses, Hughes may file a Motion for Rehearing no later than March 20, 2023.

**IT IS SO ORDERED.**

Signed at Houston, Texas on February 21, 2023.

Keith P. Ellison
United States District Judge

---

[2] Buehring disputes whether service was valid, but the Court does not need to decide this issue.